IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM S. V., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-CV-498-JED-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff William S. V. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to

establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.  Procedural History and the ALJ's Decision

Plaintiff, then a 43-year-old male, applied for Title XVI supplemental security income benefits on March 30, 2017, alleging a disability onset date of August 13, 2004, later amended to August 31, 2016. R. 10, 34, 155-161. Plaintiff claimed he was unable to work due to conditions including acid reflux, post-traumatic stress disorder ("PTSD"), anxiety, depression, bipolar, and back problems. R. 169. Plaintiff's claim for benefits was denied initially on June 5, 2017, and on reconsideration on August 16, 2017. R. 57-77. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on November 26, 2018. R. 37-73. The ALJ issued a decision on December 5, 2018, denying benefits and finding Plaintiff not disabled because he was able to perform other work existing in the national economy. R. 10-21. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of March 30, 2017. R. 12. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; status-post fusions of the L4-L5 and L5-S1 discs; and adjustment disorder. *Id.* He found Plaintiff's impairments of right carpal tunnel syndrome status-post release; history of substance abuse; issues

3

with the left arm, wrist, and hand; and breathing problems to be either non-severe or not medically determinable. R. 12-13. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 13-14. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in the two areas of (1) understanding, remembering, or applying information, and (2) concentrating, persisting, or maintaining pace; mild limitations in the area of interacting with others; and no limitation in the area of adapting or managing oneself. R. 14.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a full range of light work but with non-exertional limitations as follows:

> Specifically, the claimant can occasionally lift and/or carry up to 20 pounds, frequently up to 10 pounds, stand and/or walk at least 6 hours in an 8-hour workday, and sit for at least 6 hours in an 8-hour workday. The claimant is limited to simple repetitive tasks. He can interact with supervisors and co-worker [sic] only occasionally but not work with the public.

R. 15. At step four, the ALJ found that Plaintiff had no past relevant work. R. 20. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled light exertion work, such as Conveyor Line Bakery Worker and Small Products Assembler. R. 20-21. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 21. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.   Issues**

Plaintiff raises three points of error in his challenge to the denial of benefits: (1) the ALJ erred at step two by failing to consider his mild cognitive mental impairment; (2) the ALJ erred at

step five by failing to properly account for his hand, wrist, and arm impairments and moderate difficulties in concentration, persistence, or pace; and (3) there are an insufficient number of jobs available to Plaintiff at step five. ECF No. 13.

IV. **Analysis**

    A.    **ALJ's Step-Two Analysis Was Adequate**

Plaintiff argues that, at step two of the analysis, the ALJ failed to adequately consider his mental impairment of mild cognitive disorder. In support of his mental impairments, Plaintiff points to his hearing testimony that he has difficulty communicating with people, which leads to anger (R. 36-37); his and his mother's reports that he has memory problems and is a loner who has difficulties socializing and getting along with others (R. 181-182, 191, 194-195, 237); opinions from psychological consultative examiner Peter Ciali, Ph.D., that Plaintiff's ability to perform work-related mental activities, including remembering information, understanding instructions, and maintaining sustained concentration are moderately impaired, and he has mild deficits in the ability to socially interact and adapt (R. 238-239); and evidence of memory and abstraction problems from his low performance on the Montreal Cognitive Assessment ("MoCA") (R. 238).

As an initial matter, Plaintiff's argument that the ALJ committed reversible error at step two by failing to classify Plaintiff's alleged cognitive disorder as severe or non-severe fails. Because the ALJ found Plaintiff had severe impairments and addressed his medically determinable impairments, the issue of whether the ALJ found *all* of Plaintiff's impairments to be severe is legally irrelevant. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs.

Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Even if the ALJ failed to address the presence of a cognitive impairment at step two, the ALJ remedied any possible error by appropriately considering Plaintiff's mental impairments in determining the RFC. In the decision, the ALJ noted Plaintiff's testimony that his anger issues kept him from working, and that he had difficulty being around too many people and with conversing with others. R. 15 (citing hearing testimony). He also noted Plaintiff's mother's report, including her statements that Plaintiff wanted to be by himself but had no problem getting along with others. R. 16 (citing R. 181). The ALJ summarized Dr. Ciali's observations at the August 2016 psychological consultative exam, including evidence of mild memory deficits and fair insight and judgment. R. 16 (citing R. 236-239). The ALJ noted Plaintiff's score of 19 out of 30 on the MoCA, which was considered below normal. R. 17 (citing R. 238). The ALJ also noted Dr. Ciali's assessment of adjustment disorder with depressed mood and anxiety, cannabis use disorder, and amphetamine use disorder (in remission since 2014 per claimant). R. 17 (citing R. 238). He noted Dr. Ciali's opinions that Plaintiff's prognosis for improvement was guarded secondary to chronic pain; that Plaintiff's ability to perform work related mental activities, including remembering information, understanding instructions, and maintaining sustained concentration were moderately impaired; and that Plaintiff had mild deficits in the ability to socially interact and adapt. R. 17-18 (citing R. 238-239).

The ALJ thoroughly considered records supporting Plaintiff's impaired mental condition throughout the decision, finding he had severe adjustment disorder, consistent with Dr. Ciali's opinion. R. 12. Plaintiff fails to explain how his and his mother's statements, Dr. Ciali's observations and assessments, and his MoCA score, all of which the ALJ clearly considered, required greater mental limitations than the ALJ provided. Plaintiff points to no diagnosis of a

cognitive disorder, and Plaintiff's own statements and his mother's statements regarding his ability to get along with others are inconsistent. *See* R. 194 (Plaintiff reported no problems getting along with others), R. 181 (Plaintiff's mother indicated Plaintiff had no problems getting along with others, but also checked box showing Plaintiff's ability to get along with others was affected by his conditions). The ALJ further noted, in determining the mental RFC, that the assigned limitations were supported by and consistent with Plaintiff's own report that, notwithstanding his adjustment disorder, he was able to play computer games, do his own laundry, shop in stores, and attend church every Sunday. R. 18 (citing R. 192-193).

Even if evidence existed supporting a cognitive impairment, Plaintiff points to no such evidence that the ALJ failed to consider. To the contrary, the ALJ credited Plaintiff's testimony that he did not like people other than his family, and found as part of the RFC that he should not be required to work with the public. R. 18. Plaintiff simply invites the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The undersigned identifies no step-two error in the ALJ's consideration of his mental conditions related to cognitive impairment or ability to get along with others.

### B. ALJ's Determination of RFC and Step Five Analysis Were Proper

#### 1. Hand/Wrist/Arm Impairments

Plaintiff argues the ALJ's RFC for the full range of light work with non-exertional limitations, and the resulting step-five conclusions, were flawed, because the ALJ failed to include manipulative limitations in handling and fingering to account for his wrist and arm complaints. ECF No. 13 at 7. As Plaintiff acknowledges, the ALJ considered Plaintiff's right carpal tunnel syndrome status-post release and complaints of numbness, tingling, and burning of the left hand and possibly the left shoulder but found the right-side impairments to be non-severe and the left-side impairments to be medically non-determinable. R. 12-13. The ALJ noted at step two that

7

Plaintiff underwent carpal tunnel release on the right, non-dominant wrist in the remote past, and he had subjective complaints of a reduced range of motion of the right wrist and durational limitations on carrying objects of up to 25 pounds. R. 12. He found Plaintiff's testimony that he discussed this condition with a treating source to be inconsistent with his medical records. R. 13. As the ALJ noted, other evidence of record does not show any objective evidence of symptoms, limitations, medical treatment, or recommendations for medical treatment on the right wrist at any time during the relevant period. R. 13. *See* R. 44-47 (hearing testimony), R. 244 (clinical record indicating history of carpal tunnel release in 2009).

Regarding the left hand and shoulder, the ALJ noted Plaintiff's subjective complaints of numbness, tingling, and burning of the left hand and possibly the left shoulder, as well as subjective complaints of limitations with prolonged overhead reaching. R. 13. He again found Plaintiff's testimony that he discussed this condition with a treating source to be inconsistent with his medical records. R. 13. As the ALJ noted, other evidence of record does not show any objective evidence of symptoms, limitations, medical treatment, or recommendations for medical treatment on the left arm, wrist, or hand. R. 13. He further noted that there is no diagnosis of any impairment of the left arm, wrist, or hand. *Id. See* R. 47-48 (hearing testimony).

Plaintiff does not challenge any of the ALJ's findings related to either hand or the left shoulder. However, he argues that the ALJ should have imposed handling and fingering restrictions into the RFC, because postural manipulative functioning limitations are "still important." ECF No. 13 at 7. The undersigned identifies no error in the ALJ's assessment of Plaintiff's right carpal tunnel syndrome or left hand/shoulder impairments and finds no support for Plaintiff's allegation that the ALJ should have assigned manipulative limitations on either hand as a result. Plaintiff points to no objective evidence, current diagnosis, or subjective complaints to medical providers supporting any medically determinable impairments on the left wrist/hand/arm

8

or any functional impairments on the right wrist. Neither Plaintiff nor his mother indicated he had difficulty using his hands. R. 181, 194. The ALJ appropriately considered Plaintiff's hand/arm impairments and did not impose any manipulative RFC limitations based on those alleged impairments. As a result, the ALJ was not required to eliminate any of the step-five jobs from consideration based on their handling requirements. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (finding that a hypothetical question to VE must contain "only . . . those impairments borne out by the evidentiary record").

### 2.     Step-Three Moderate Mental Difficulties

Plaintiff contends that the ALJ erred by not explicitly incorporating his finding of step-three "moderate" mental limitations regarding concentrating, persisting, and maintaining pace into the RFC assessment. R. 14. However, an ALJ is not necessarily bound by his step-three findings when determining a claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at *4; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."). The ALJ explained as much in the decision. R. 14 (stating that the mental limitations identified in the "paragraph B" functional criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps two and three, and the mental RFC "requires a more detailed assessment").

While the ALJ must consider evidence of mental impairments when formulating an RFC or hypothetical question to the VE, the ALJ is not required to expressly include step-three findings as to concentration, persistence, or pace in the RFC. *See* SSR 96-8p (stating that the mental RFC determination requires a "more detailed assessment" of the various functions contained in the broad mental limitation categories listed at steps two and three). Plaintiff's cited authority from the Tenth Circuit stands simply for the concept that an ALJ must consider evidence of mental

9

impairments when formulating an RFC or hypothetical question to the VE. *See Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005). This case does not stand for the proposition that step-three findings as to concentration, persistence, or pace must be expressly included in the RFC or that his step-three "moderate" mental difficulties would preclude "fast-paced" work.

Here, the ALJ accommodated Plaintiff's difficulties in concentration by limiting Plaintiff to unskilled work, which does not require concentration or attention for more than two hours at a time. R. 20. *See* SSA Program Operations Manual System ("POMS") DI § 25020.010(B)(3) (unskilled work requires claimant to "maintain attention for extended periods of 2-hour segments (concentration is not critical)"). The ALJ also limited Plaintiff to only simple and repetitive tasks; occasional interaction with supervisors and co-workers; and no work with the public. R. 15. In reaching this determination, the ALJ reviewed Plaintiff's testimony, opinion evidence, and records discussing Plaintiff's mental condition, and he connected those records to the RFC findings. R. 16-18.

The ALJ was not required to expressly include additional limitations regarding concentration, persistence, or pace in the RFC. Plaintiff fails to demonstrate that his mental limitations were more severe than the ALJ indicated in the RFC. Accordingly, Plaintiff's argument fails.

    **C.**    **A Significant Number of Step-Five Jobs Is Available**

Plaintiff argues that an insufficient number of jobs is available for him to perform, given his manipulative limitations. ECF No. 13 at 8. However, as explained above in Part IV.B.1, the ALJ appropriately found Plaintiff's hand/wrist/arm impairments to be non-severe or not medically determinable, and the RFC properly did not include any manipulative limitations. As a result, the

ALJ was not obliged to exclude either of the step-five jobs from consideration, and a significant number of jobs is available.

Plaintiff further contends that, in light of his memory deficits as evidenced during the consultative exam, the ALJ should have excluded both of the step-five jobs from consideration as "fast-paced jobs." ECF No. 13 at 9-10. Plaintiff points out that jobs such as a small products assembler and bakery worker, as light-exertion jobs, can be fast-paced or require quota production. *See* DOT App'x C (noting, as part of the definition of "light work," that "[t]he constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible").

Plaintiff's argument fails. Plaintiff cites no authority to suggest that the DOT citation defining "light work" pertains to the mental requirements of a job, rather than the physical "stress and strain" requirements. Plaintiff also cites no authority to indicate that mild memory deficits necessarily indicate a cognitive impairment or require a specific exclusion of "fast-paced" jobs from consideration at step five. As explained above in Part IV.A, the ALJ adequately considered the records Plaintiff cites supporting his alleged cognitive impairment, including alleged issues with his memory. The ALJ was not obliged to assign any further mental limitations in the RFC or to ask the VE about further mental impairments based on Dr. Ciali's observations, Plaintiff's MoCA score, or Plaintiff's reports of memory issues. As a result, the ALJ was not required to exclude either of the step-five jobs from consideration, and a significant number of jobs was available.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by March 31, 2021.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 17th day of March, 2021.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**