UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM S. V., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-CV-0498-CVE-JFJ |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the report and recommendation (Dkt. # 20) of United States Magistrate Judge Jodi F. Jayne, recommending that the Court affirm the Commissioner's denial of plaintiff's application for benefits under Title XVI of the Social Security Act.

**I.**

Plaintiff was 43-years old when he applied for Title XVI benefits on March 30, 2017, alleging disability as of August 13, 2004 (later amended to August 31, 2016) due to acid reflux, post-traumatic stress disorder (PTSD), anxiety, depression, bipolar disorder, and back problems. Dkt. # 10, at 10, 34, 155, 169. The Commissioner denied plaintiff's application for benefits initially on June 5, 2017, and on reconsideration on August 16, 2017. Id. at 57, 67. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), and the ALJ conducted the hearing on November 26, 2018. Id. at 31-56, 94. The ALJ issued a decision on December 5, 2018, denying benefits and finding plaintiff not disabled because he was able to perform other work existing in

---

[1] Effective July 11, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the national economy. Id. at 10-21. The Appeals Council denied review, and plaintiff appealed. Id. at 1-3; Dkt. # 2.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. Fed. R. Civ. P. 72(b). However, the parties may "serve and file specific written objections" to the proposed findings and recommendations within fourteen days after being served with a copy of the recommended disposition. Id.; see also 28 U.S.C. § 636(b)(1); Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

The right to de novo review is subject to the Tenth Circuit's "firm-waiver rule," which states that "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. 2121 E. 30th St., 73 F.3d 1057, 1059-60 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Id. at 1060. The Tenth Circuit has applied the firm-waiver rule where the plaintiff's objection to the report and recommendation merely asserted a series of errors without

explaining why the magistrate's reasoning was erroneous. See Zumwalt v. Astrue, 220 F. App'x 770, 777 (10th Cir. 2007).[2]

### III.

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and therefore entitled to benefits. See 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)). "Step one requires the claimant to demonstrate 'that he is not presently engaged in substantial gainful activity.'" Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.2005)). "At step two, the claimant must show 'that he has a medically severe impairment or combination of impairments.'" Id. (quoting Grogan, 399 F.3d at 1261). "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988)). "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show 'that the impairment or combination of impairments prevents him from performing his past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If the claimant meets this burden, the analysis continues to step five, where the burden of proof shifts to the Commissioner to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given the claimant's age, education, and work experience. Id. (citing Hackett, 395 F.3d at 1171).

---

[2] This and other cited unpublished decisions are not precedential but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

In reviewing the ALJ's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ; the Court's task is to review the record to determine if the ALJ applied the correct legal standard and if her decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

## IV.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of March 30, 2017. Dkt. # 10, at 12. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; status-post fusions of the L4-L5 and L5-S1 discs; and adjustment disorder. Id. He found plaintiff's complaints of right carpal tunnel syndrome status-post release, history of substance abuse, issues with the left arm, wrist, and hand, and breathing problems, to be either non-severe or not medically determinable. Id. at 12-13. At step three, the ALJ found that plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. Id. at 13- 14. In assessing plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found moderate limitations in two areas (understanding, remembering, or applying information, and

4

concentrating, persisting, or maintaining pace); mild limitations in one area (interacting with others); and no limitation in the area of adapting or managing oneself. Id. at 14.

The ALJ then summarized plaintiff's testimony, the objective and opinion evidence, and concluded that plaintiff had the RFC to perform a full range of light work with some non-exertional limitations:

> [C]laimant can occasionally lift and/or carry up to 20 pounds, frequently up to 10 pounds, stand and/or walk at least 6 hours in an 8-hour workday, and sit for at least 6 hours in an 8-hour workday. The claimant is limited to simple repetitive tasks. He can interact with supervisors and co-worker [sic] only occasionally but not work with the public.

Id. at 15. The ALJ found at step four that plaintiff had no past relevant work. Id. at 20.

At step five, however, the ALJ found that plaintiff could find work in the national economy. Id. at 20-21. Citing the testimony of a vocational expert, the ALJ found plaintiff could perform unskilled, light-exertion work, such as "conveyer line bakery worker" and "small products assembler." The ALJ determined the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles (DOT) and that the proposed positions existed in significant numbers in the national economy. Id. at 21. Accordingly, the ALJ concluded Plaintiff was not disabled.

### V.

Plaintiff raises three points of error in his objection: (1) the ALJ failed to properly consider plaintiff's cognitive mental impairment; (2) the ALJ erred by failing to properly account for plaintiff's carpel tunnel syndrome; and (3) the ALJ erred in his step-five finding that there are sufficient jobs available to plaintiff. Dkt. # 21. Having reviewed the record de novo with respect to these issues, the Court finds no reversible error for the reasons stated below.

A.     **Mental Impairments**

Plaintiff argues that the ALJ should have found plaintiff to have a medically determinable cognitive impairment at step two and, consequently, included more restrictive mental limitations in plaintiff's RFC at steps four and five. Dkt. # 21, at 1-5. Consulting examiner Peter Ciali, Ph. D., assessed plaintiff and found moderate impairments in the areas of remembering information, understanding instructions and maintaining sustained concentration; and mild deficits in the ability to socially interact and adapt. Dkt. # 10, at 238-39. Dr. Ciali also administered the Montreal Cognitive Assessment (MoCA). Whereas a MoCA score of 26/30 is considered normal, plaintiff scored 19/30. Plaintiff argues that, given this evidence, the ALJ was obliged to determine at step two whether plaintiff had a medically determinable impairment of cognitive disorder. Moreover, plaintiff argues, the evidence shows that he does have a cognitive impairment, so the ALJ should have found an RFC with more mental limitations.

There are three problems with plaintiff's argument. First, to the extent the ALJ erred at step two by failing to expressly determine whether plaintiff had a medically determinable impairment of cognitive disorder, the error was harmless. In order to avoid a determination of "not disabled" at step two, a plaintiff need only demonstrate that he has one severe impairment. See Allman v. Colvin, 813 F.3d 1326, 1330 (10th Cir. 2016); Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008). Thus, when the ALJ determined that plaintiff's degenerative disc disease was a severe impairment, plaintiff's alleged cognitive disorder became legally irrelevant for the purposes of step two.

Second, plaintiff proceeds on the assumption that he has a cognitive disorder, but he has not pointed to any evidence that would establish this. Although he contends that his MoCA score

6

is sufficient to demonstrate a cognitive disorder diagnosis, Dr. Ciali, the examining psychologist who conducted the test, did not diagnose plaintiff with cognitive disorder.

Third, even if the ALJ erred in not finding a cognitive impairment at step two, he proceeded to consider plaintiff's mental impairments at step three and during the RFC analysis. See Dkt. # 10, at 13-14, 17-18. And, as the magistrate judge explains in her report and recommendation, the ALJ thoroughly discussed the relevant evidence in determining that plaintiff was limited to unskilled work involving simple and repetitive tasks. See Dkt. # 20, at 6-7. Thus, even if the ALJ did not explicitly identify a medically determinable impairment related to plaintiff's cognitive function, the ALJ accounted for the resulting limitations in his RFC. As plaintiff points to nothing in the record contradicting the ALJ's RFC finding, which is consistent with Dr. Ciali's opinion, the Court finds no reversible error regarding the ALJ's treatment of plaintiff's alleged cognitive disorder.

Plaintiff argues more generally that the mental restrictions in the ALJ's RFC, which included an "unskilled work" limitation and a "simple, repetitive tasks" limitation failed to adequately account for plaintiff's mental impairments. This argument fails, however, because plaintiff does nothing to explain why the ALJ's limitations were inadequate.

Plaintiff contends that the ALJ's inclusion of an "unskilled work" limitation did not adequately account for Dr. Ciali's opinion that plaintiff's ability to "maintain[] sustained concentration" was "moderately impaired." Dkt. # 21, at 3-4; see also Dkt. # 10, at 238-39. In support of this argument, he cites Vigil v. Colvin, 805 F.3d 1199 (10th Cir. 2015), for the proposition that an unskilled-work limitation "may" in some cases fail to adequately address a claimant's mental limitations, but he does nothing to explain why it was insufficient in this case. Moreover, he ignores the outcome in Vigil. There, the court held that an unskilled-work limitation

7

was sufficient to account for the ALJ's finding that the claimant had a moderate limitation in the area of concentration, persistence, and pace. Vigil, 805 F.3d at 1203-04. Plaintiff does not explain why the Court should reach a different conclusion in this case. The Commissioner's own guidance to adjudicators strongly suggests that an unskilled-work limitation is appropriate for an individual with a moderate deficit in his ability to maintain concentration. See Social Security Administration Program Operations Manual System (POMS) § DI 25020.010(B)(3) (noting that the capacity to perform unskilled work includes the ability to maintain attention for two-hour periods but that concentration is "not critical").

Plaintiff makes a similar attack on the ALJ's "simple[,] repetitive tasks" limitation, citing a pair of District of New Mexico cases in which the court held that comparable RFC restrictions failed to account for mental limitations reported by state-agency reviewers. Dkt. # 21, at 4 (citing Garza v. Saul, No. 19-699, 2020 U.S. Dist. LEXIS 167151, at *38-39 (D.N.M. Sep. 14, 2020) (D.N.M. 2020) (unpublished); Fatheree v. Saul, No. 19-704, 2020 U.S. Dist. LEXIS 110648 (D.N.M. June 24, 2020). Those cases, however, are entirely inapposite.

Fatheree and Garza involved plaintiffs who had more and different mental deficits than plaintiff. In Fatheree, the court held that the ALJ's finding that the plaintiff could "perform simple and some detailed tasks" did not adequately account for the opinions of state-agency reviewers who found moderate limitations in the plaintiff's ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) accept instructions and respond appropriately to criticism from supervisors; and (4) respond appropriately to changes in the work setting. See 2020 U.S. Dist. LEXIS 110648, at *9, *30-31. Similarly, in

8

Garza, the court held that an RFC restricting the plaintiff to "simple, routine, repetitive work, with 1, 2, or 3 step instructions" did not adequately account for the opinions of state-agency reviewers who found moderate limitations in the plaintiff's ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) to interact appropriately with the general public; (4) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (5) to respond appropriately to changes in the work setting. 2020 U.S. Dist. LEXIS 167151, at *8, *37-38.

Here, the ALJ found moderate limitations in two of the "paragraph B" criteria: understanding, remembering, and applying information; and concentration, persistence, and maintenance of pace.  His opinion included none of the detailed limitations discussed in Garza and Fatheree. Given these differences, the cases are unpersuasive. As a result, and for the reasons explained by the magistrate judge in the report and recommendation, see Dkt. # 20, at 9-10, the Court finds that the mental limitations in the ALJ's RFC finding adequately account for plaintiff's mental impairments. Plaintiff's failure to cite any authority to the contrary reduces his argument to a complaint that the ALJ could have included a more restrictive RFC but declined to do so. This is not a reason to remand.

**B.      Physical Impairments**

Plaintiff argues that the ALJ erred by not including any handling or fingering limitations in his RFC, despite alleged impairments to plaintiff's right wrist and hand. Dkt. # 21, at 5-6. This argument has no merit.

9

At step two, the ALJ discussed plaintiff's testimony regarding a carpal tunnel syndrome release procedure performed on his right, nondominant wrist, as well as plaintiff's testimony that he still has reduced range of motion in that wrist and durational limitations on carrying objects of more than twenty-five pounds. Dkt. # 10, at 12-13. The ALJ found, however, that these complaints were inconsistent with the medical record. Although plaintiff testified that he discussed the condition with his treating source, the ALJ found "no significant objective evidence of symptoms, limitations, medical treatment, or recommendations for medical treatment at any time during the relevant period." Id. at 12-13. The ALJ therefore concluded that "claimant's right carpal tunnel syndrome status-post release is not severe." Id. Plaintiff contends that that the ALJ was obliged to include a manipulative limitation in his RFC because he found plaintiff's carpal tunnel to be a medically determinable impairment, albeit a nonsevere one.

In support of this claim, plaintiff asserts the following:

> [A] conclusion that the claimant's…impairments are non-severe at step two does not permit the ALJ to simply disregard those impairments when assessing their effect at steps four and five. Rather, "in his RFC assessment, the ALJ must consider the combined effects of all medically determinable impairments, whether severe or not."

Dkt. # 21, at 6 (quoting Suttles v. Colvin, 543 F. App'x 824, 825 (10th Cir. 2013)). Plaintiff's reliance on Suttles is misplaced.

Suttles (and the other authority plaintiff cites on this point) relates to the ALJ's responsibilities when dealing with mental impairments, which are evaluated differently than physical impairments.[3] The process requires adjudicators to make specific findings at step two regarding a claimant's functional limitations in various areas. Wells v. Colvin, 727 F.3d 1061,

---

[3] Plaintiff's counsel, rather deceptively, omits the word "mental" from the quoted material. See Suttles, 543 F. App'x, at 825 ("[a] conclusion that the claimant's *mental* impairments are non-severe at step two . . . ." (emphasis added)).

1068-69 (10th Cir. 2013); SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996); POMS § DI 24583.005. In Wells, which provided the rule applied by the court in Suttles, the Tenth Circuit held that it was reversible error for an ALJ to find specific limitations in mental function at step two and then fail to discuss those limitations when evaluating the claimant's mental RFC. See Wells, 727 F.3d at 1068-69. Here, the ALJ made no specific findings regarding any limitations the carpel tunnel status may have caused. To the contrary, he noted that there was no medical evidence in the record related to plaintiff's alleged symptoms. Because the ALJ made no findings about any limitations related to the alleged impairment, the Court finds no reversible error in the ALJ's decision not to include any handling or fingering limitations in his RFC.

To the extent the ALJ erred, it was in finding that plaintiff's alleged wrist symptoms were caused by a medically determinable impairment. An "impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. Objective medical evidence means signs (i.e., observable abnormalities), laboratory findings, or both. See POMS § DI 24501.020(A); SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996). The existence of an impairment must be determined by the objective medical evidence alone. SSR 96-4p, 1996 WL 374187, *1. It cannot be established by reference to a diagnosis, medical opinion, or the plaintiff's statements about his symptoms (i.e., the claimant's own description of his or her physical or mental impairments). See id.; 20 C.F.R. § 416.921; POMS § DI 24501.020(A).

Here, the record includes no objective medical evidence regarding plaintiff's carpal tunnel syndrome. The only evidence of any wrist issues comes from plaintiff's own testimony and references to a carpal tunnel surgery that appear periodically in the medical-history sections of various medical charts. Dkt. # 10, at 45-46, 242, 244, 280. There are no laboratory findings or clinical observations of any kind regarding the condition. Thus, because the record shows no

objective medical evidence regarding any wrist impairment, plaintiff failed to establish a medically determinable impairment in the first place. Absent a medically determinable impairment, the inclusion of any handling or fingering limitation in plaintiff's RFC would have been in error.

**C.     Numeric Significance**

Plaintiff argues that the ALJ erred in finding at step five that there were enough jobs available to plaintiff such that he could transition to other work. Dkt. # 21, at 7-8. During the hearing, the vocational expert testified that there were 25,000 conveyer-line-bakery-worker jobs and 190,000 small-products-assembler jobs available in the national economy, and the ALJ determined that this was sufficient to show that other work existed in "significant numbers" for the purposes of showing that plaintiff was capable of transitioning to other work. Id., at 21. Plaintiff contends that the ALJ should not have included the 190,000 small-products-assembler jobs in his analysis because plaintiff's hand and wrist impairments render him incapable of the frequent handling and fingering that the job requires. See DOT 706.684.22, 1991 WL 679050. When that position is removed, he contends, the remaining 25,000 bakery-worker jobs are not enough to show that work for plaintiff exists in "significant numbers" in the national economy.

This argument is unavailing. The ALJ did not include handling and fingering limitations in his RFC, and, for the reasons explained above, the ALJ's RFC finding in that regard is supported by substantial evidence. Accordingly, because the occupation of small-products assembler was within plaintiff's RFC, it was entirely appropriate for the ALJ to include the jobs available in that occupation when determining that plaintiff could find work. As plaintiff has not shown that 215,000 jobs is insufficient as a matter of law, the Court sees no reason to disturb the ALJ's finding that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 20) is **accepted** and the Commissioner's decision denying benefits is **affirmed.** A separate judgment is entered herewith.

**DATED** this 23rd day of August, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE